440 So.2d 1320 (1983)
George F. GIDDENS, Individually, and for the Use and Benefit of Employer's Insurance of Wausau, Appellant,
v.
DENMAN RUBBER MANUFACTURING COMPANY, etc.; World Tire Corporation, etc.; Admiral Insurance Company, etc.; and Pacific Indemnity Company, etc., Appellees.
No. 82-902.
District Court of Appeal of Florida, Fifth District.
November 3, 1983.
Rehearings Denied November 28, 1983.
*1321 Daniel J. Roberson of Roberson & Roberson, DeLand, for appellant.
Frank Marriott, Jr., of Cameron, Marriott, Walsh & Hodges, P.A., Daytona Beach, for appellee Denman.
Sutton G. Hilyard, Jr., of Pitts, Eubanks & Ross, P.A., Orlando, for appellee World Tire Corp.
No appearance for appellees Admiral Ins. and Pacific Indem.
ORFINGER, Chief Judge.
Plaintiff, George F. Giddens, appeals a final judgment and the denial of a motion for new trial following an adverse jury verdict in this product liability case. Giddens was injured when a tire he was mounting in his employer's garage blew off the rim. He sued the manufacturer and distributor of the tire and the manufacturer of the rim, alleging negligence in one count and strict liability in another.
Prior to trial, a final summary judgment was entered in favor of the manufacturer of the rim, and that judgment has not been appealed. During trial, at the conclusion of all the evidence, the plaintiff voluntarily dismissed the negligence count, and the case went to the jury only on the strict liability count. In the special interrogatory verdict, the jury found that the tire in question was not "defective when placed on the market." Giddens contends, among other things, that he was prevented by an erroneous ruling of the court from fully developing the legal concept of "defect" in the tire, and is thus entitled to a new trial. We agree, and reverse.
Giddens alleged in his complaint that the tire in question was defective in that, when mounted on a 16.5-inch diameter rim, it had the propensity to separate from the rim and explode, and that the tire was placed on the market without adequate information or warning concerning this defect. Nowhere in the complaint was there any allegation as to the size of the tire. The parties, however, do not appear disturbed about this obviously important omission, because subsequent discovery proceedings indicated that the size of the tire was in dispute.
In deposition testimony, Giddens asserted that, as directed by his employer, he mounted the new 16.5-inch diameter tire on the 16.5-inch rim, that it was not a 16-inch tire, and that he knew that a 16-inch tire should not be mounted on a 16.5-inch rim. His testimony as to the consequences of mounting a 16-inch tire on a 16.5-inch rim was contradictory. At one point he testified that the tire might "bust," at another point he testified that he didn't think he could get the tire on the rim. He was emphatic, however, in his testimony that there was no warning label on the tire itself alerting a user to any danger in mounting the tire in question on a 16.5-inch rim.
In deposition testimony and by answers to interrogatories, defendants asserted that the tire in question was a 16-inch tire and that on every similar 16-inch tire Denman placed two distinct labels which remained on the tire when delivered by the distributor, World. One label, in large red letters read:
CAUTION. MOUNT ONLY ON 16" RIM. DO NOT MOUNT ON 16.5 RIM. FAILURE TO COMPLY WITH THIS WARNING CAN CAUSE BURSTING, RESULTING IN SERIOUS INJURY.
The other warning is on the label indicating the size of the tire, and although not as specific as the one mentioned above, cautions the user that tire and rim diameters must match in size and gives mounting instructions and other cautionary directions. This label then advises that "failure to comply with these safety instructions can cause the bead to break and the assembly to burst with force sufficient to cause serious injury." *1322 Defendants' witnesses all testified by deposition that these labels were on both tires which Giddens mounted that day, and that both were 16-inch tires. Giddens, by his depositions and affidavit, asserted that the tires were 16.5-inch in diameter, and contained no warning labels.
Defendants moved for summary judgment, arguing specifically that the alleged failure to warn of the danger in attempting to mount a tire on an incompatibly sized rim could not be a proximate cause of the plaintiff's injury, because plaintiff believed he was correctly matching the tire and the rim. Any warning, they argue, would have been useless as a matter of law and would not have deterred Giddens, because he believed that the tire he was mounting was properly sized for the rim. The trial court agreed, and entered a partial summary judgment for defendant, holding that "said defendant's failure to warn or to inform potential users of the danger of mounting or attempting to mount a 16-inch diameter tire on a 16.5-inch diameter rim was not a proximate cause of the accident referred to in the Amended Complaint, and was not a proximate cause of Plaintiff's alleged injury."
As his first point on appeal, plaintiff contends that the trial court erred in granting the partial summary judgment on the warning issue. We agree that the jury should have been permitted to decide the disputed issue of whether there was or was not a warning label (or labels) on the tire in question, and to determine whether the absence of such label, if that were the fact, was a proximate cause of plaintiff's injury.
In West v. Caterpillar Tractor Company, 336 So.2d 80 (Fla. 1976), the supreme court adopted the doctrine of strict liability in tort as espoused in Restatement (Second) of Torts, § 402A (1965). In West, the supreme court said:
In other words strict liability should be imposed only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. The user should be protected from unreasonably dangerous products or from a product fraught with unexpected dangers. In order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of the proximate causal connection between such condition and the user's injuries or damages.
336 So.2d at 86, 87.
Before considering whether the issue of proximate causation should be submitted to the jury, we must determine if the failure to warn that a particular use of a product is dangerous to the user, makes the product "defective" within the meaning of Restatement of Torts (Second), § 402A.
Comment (h) to section 402(A) says, in pertinent part:
"A product is not in a defective condition when it is safe for normal handling ... Where, however, [the seller] has reason to anticipate that danger may result from a particular use ... he may be required to give adequate warning of the danger (see comment j), and a product sold without such warning is in defective condition." (emphasis added).
Comment j adds:
"Directions or Warning. In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use.
.....
Where warning is given, the seller may reasonably assume that it will be read and heeded: and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."
Professor Prosser has stated that:
"Defect" need not be a matter of errors in manufacture, in that a product is "defective" when it is properly made according to an unreasonably dangerous design, or when it is not accompanied by adequate *1323 instructions and warning of the dangers attending its use. Prosser, Law of Torts, 659 (4th ed. 1979).
The principle that an otherwise safe product may nevertheless be defective when no warning is given regarding the danger involved in a particular foreseeable use has been recognized, at least implicitly, in Cassisi v. Maytag Company, 396 So.2d 1140 (Fla. 1st DCA 1981). That same court, while holding that a tire is not an inherently dangerous product, has recognized the principle that:
Except with regard to products which are inherently dangerous as a matter of law, whether or not the manufacturer or retailer should have warned the consumer of a product's dangerous propensities is a question for the jury based upon the manufacturer's foreseeability of injury to the consumer.
Dayton Tire and Rubber Co. v. Davis, 348 So.2d 575, 582 (Fla. 1st DCA 1977), rev. on other grounds, 358 So.2d 1339 (Fla. 1978).
In considering the defendant's motion for summary judgment the trial court was required to view all disputed issues of fact in a light most favorable to the plaintiff, Wills v. Sears, Roebuck & Co., 351 So.2d 29 (Fla. 1977); Forys v. McLaughlin, 436 So.2d 280 (Fla. 5th DCA 1983), which in this case means that the court was required to consider that the warning labels referred to earlier in this opinion were not affixed to the tires in question. Unless it be said that the failure to warn was not, as a matter of law, a proximate cause of plaintiff's injury, the issue of proximate causation is one for the jury. Blaw-Knox Food and Chemical Corp. v. Holmes, 348 So.2d 604 (Fla. 4th DCA) cert. dismissed, 351 So.2d 405 (Fla. 1977). Defendants insist that a warning would not have deterred Giddens from mounting the tire, because he believed that he was mounting a 16.5-inch tire. However, at the time it considered the motion for summary judgment, the evidence before the court most favorable to the plaintiff on the warning issue was that he was mounting a 16-inch tire on a 16.5-inch rim and that the tire did not have the usual cautionary label which the manufacturer knows is required for the safe use of the tire. The evidence is thus susceptible of the inference that if the customary warning labels had been on this tire, Giddens would have been alerted to the fact that it was a 16-inch tire and that this tire must not be mounted on a 16.5-inch rim. Because disputed issues exist which, if determined by the jury in plaintiff's favor, could have supported a proximate causal connection between the absence of the warning labels and the ultimate injury, these issues should have been resolved by the jury, rather than by the court on summary judgment.
The warning labels placed on its 16-inch tires by the manufacturer show clear evidence of the manufacturer's appreciation of the danger involved in mismatching this tire and a 16.5-inch rim, and the foreseeability of injury from such mismatch, and the court should not have foreclosed the plaintiff from presenting this issue to the jury. We do not agree, as asserted by defendants, that the warning issue is controlled by our decision in American Motors Corporation v. Ellis, 403 So.2d 459 (Fla. 5th DCA 1981), pet. for rev. den., 415 So.2d 1359 (Fla. 1982), because in Ellis, we said that there was no evidence adduced at trial "to show how any warning from AMC to the owner ... could have prevented or ameliorated the injuries..." suffered by plaintiff. Here, there is available an inference that if the tire in question was a 16-inch tire and if it had contained the warning label, the plaintiff would not have attempted to mount it on the rim. The jury may or may not accept any of the plaintiff's evidence or inferences, but it is the jury's function to determine the facts and the inferences arising from them.
In Trujillo v. Uniroyal Corp., 608 F.2d 815 (10th Cir.1979), the facts are quite similar. Trujillo was injured when mounting a 16-inch tire on a 16.5-inch rim, although he believed he was mounting the tire on a 16-inch rim. He testified that he knew that a 16-inch tire should not be mounted on a 16.5-inch rim, and the trial court excluded evidence of any absence of warning of the *1324 consequences of such mismatch. In reversing, the circuit court held:
A belief that it should not be done because it may hurt the tire, or even that it may cause injury, is different from knowing that there is risk of explosion or even fatal bodily harm. Not merely some risk, but the nature and degree of the risk must be appreciated.
.....
Trujillo should have been permitted to show a properly instructed jury that he did not appreciate the danger of explosion, which is out of proportion to the risk he may have thought he was undertaking in mounting the tire.
If warned of the very serious consequences of attempting to mount a 16-inch tire on a 16.5-inch rim, Trujillo may have taken precautions he disregarded in this case. While the evidence may be strong that no warning would have overcome Trujillo's mistaken belief as to the size of the tire, he nonetheless was entitled under the failure to warn theory to present the jury with that possibility.
Id. at 819.
The final judgment is reversed and the cause is remanded for a new trial.
REVERSED and REMANDED.
SHARP, J., concurs.
COBB, J., dissents with opinion.
COBB, Judge, dissenting:
It was the unequivocal sworn testimony of Giddens, both at trial and in his pretrial deposition, that the size of the tire he mounted was 16.5 inches. At trial he testified that he compared the tire to comparable tires and actually read a label on it prior to mounting that showed it to be a 16.5-inch tire. Based on past experience, he knew that to mount a smaller tire on a larger rim could cause it to "bust." Given these facts, a warning label not to mount tires on larger rims would not have influenced or deterred the plaintiff in any way. Giddens' assertion that he mounted a 16.5-inch tire enabled him to deny any contributory negligence at trial. It left him with the claim that a manufacturing defect in the tire caused it to explode  a claim rejected by the jury. Giddens now shifts gears on appeal and argues that perhaps, after all, despite his trial testimony, the tire really was a 16-inch tire, he may have been partially at fault, and a new jury could so conclude. As I see it, he is estopped to make this argument. He had his bite at the apple and he missed.
Such pragmatic posture shifts on appeal, prompted by an adverse jury verdict below, should be discouraged rather than encouraged. Cf. Elison v. Goodman, 395 So.2d 1201 (Fla. 3d DCA 1981) (stating the well-settled rule that a party is not permitted to alter a previously asserted position simply to avert summary judgment). I would affirm.