# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

—————————————————

Case No. 5D2024-1959
LT Case No. 16-2014-CA-4130

—————————————————

SUZUKI MOTOR CORPORATION,

Appellant,

v.

SCOTT WINCKLER,

Appellee.

—————————————————

On appeal from the Circuit Court for Duval County.
Katie L. Dearing, Judge.

Raoul G. Cantero and W. Dylan Fay, of White & Case LLP,
Miami, Niels P. Murphy and Catherine M. Licandro, of Murphy &
Anderson, P.A., Jacksonville, and Rick Mueller, pro hac vice, of
Mueller Counts, St. Louis, for Appellant.

Jeffrey A. Cohen, of Carlton Fields, Miami, and Nathaniel G.
Foell, of Carlton Fields, Tampa, Amicus Curiae Product Liability
Advisory Council, Inc.

Keith R. Mitnik, Joshua D. Moore, Harris I. Yegelwel, and T.
Michael Morgan, of Morgan and Morgan, P.A., Orlando, and Shea
T. Moxon, of Brannock Berman & Seider, Tampa, and Jeffrey R.
Bankston, of Bushman, Ahern, Persons & Bankston, Jacksonville,
for Appellee.

April 10, 2026

KILBANE, J.

This claim arises from a collision between a motorcycle manufactured by Suzuki Motor Corp. ("Suzuki") and a sports utility vehicle ("SUV"). Scott Winckler ("Winckler")—who was driving his friend's motorcycle when the accident occurred—sued Suzuki asserting the accident was caused by design and warning defects relating to the motorcycle's braking system. After ten years of litigation and four jury trials, Suzuki appeals a final judgment finding it liable for negligent warning. Suzuki raised five issues on appeal, only two of which merited discussion: (1) whether the trial court erred in allowing Winckler to proceed on the warning defect claim after a jury returned a defense verdict on the strict liability design defect claim and (2) whether the trial court erred in admitting Suzuki's safety recall into evidence. Because we answer both questions in the negative, we affirm.

**Facts**

*A.     Background*

On June 14, 2013, Paul Barker changed the brake fluid in his 2007 Suzuki GSX-R1000 motorcycle to prepare to attend a rider improvement event at a raceway near Savannah, Georgia. At the event, motorcyclists pay to ride their own bikes on the racetrack under the supervision of a professional rider. Barker rode his motorcycle at speeds from 40 to 160 mph. During these sessions, Barker did not feel any issues with the front brake.

That evening, Barker and Winckler trailered the motorcycle to Winckler's house, where Winckler agreed to drive the motorcycle a little over a mile to Barker's house. Before leaving, Winckler tested the front brakes by pressing the brake lever to feel for pressure and then applying them to perform a "stoppie"[1] on the driveway at approximately 10 mph. On the way to Barker's house, Winckler stopped at a stop sign before returning to around 30 mph. But when an SUV pulled in front of him at a subsequent intersection, Winckler's use of the front brake failed

---

1. A "stoppie" is performed by pulling the front brakes hard enough that the back tire lifts from the pavement.

2

to stop the motorcycle before it collided with the vehicle. Winckler was thrown from the bike and suffered a spinal injury causing permanent paralysis from the waist down.

## B. *Suzuki Safety Recall*

In October 2013, Suzuki notified the National Highway Traffic Safety Administration ("NHTSA") that it was recalling certain motorcycles including Barker's 2007 GSX-R1000. Suzuki would be replacing each motorcycle's front brake master cylinder because the brake piston inside could corrode, which "may result in a reduction of fluid pressure transmission to the front brake." In notices sent to owners, Suzuki warned "[c]orrosion of the brake piston generates gas, which may not be adequately purged from the master cylinder . . . can affect braking power by reducing proper fluid pressure transmission to the front brake." With enough accumulation, they explained, "the front brake lever may develop a 'spongy' feel and stopping distances may be extended, increasing the risk of a crash." Owners were warned not to allow anyone to ride a recalled motorcycle until it was serviced, even if the brakes "feel like they have adequate pressure."

## C. *Legal Proceedings*

In June 2014, Winckler sued Suzuki and others for warranty breaches, negligence, and strict liability. As to Suzuki, he brought claims for strict liability design defect and negligent warning defect asserting the accident was caused by the reduction of fluid pressure transmission in the front braking system.

Four trials were held in this case. The first and third trials ended in mistrial. In May 2022, at the second trial, the jury rendered a defense verdict as to the strict liability claim but could not reach a verdict as to the negligence claim. Winckler objected that accepting the partial verdict would erroneously direct the jury to reconsider part of an inconsistent verdict, but the trial court found it was not an inconsistent verdict. The trial court accepted the partial verdict at Suzuki's request. Suzuki had moved for directed verdict and renewed its motion at the end of the trial but never moved for judgment in accordance with its motion after the verdict was rendered.

In February 2023, Suzuki moved for summary judgment asserting the verdict on the strict liability claim disposed of the negligent warning claim. Winckler responded that Suzuki was implicitly arguing that the jury reached an inconsistent verdict, which it waived, by failing to object before the jury was discharged, and that the jury was not precluded from considering the negligent warning claim in a new trial because even a non-defective product requires adequate warnings of foreseeable risks. After a hearing, the trial court denied the summary judgment motion.[2]

In April 2024, the fourth jury found Suzuki negligent in failing to warn about the risks of the front brake master cylinder. The trial court rendered its final judgment consistent with the jury's verdict. Suzuki timely appealed.

## Analysis

Suzuki asserts the trial court reversibly erred in (1) denying its motion for summary judgment after the second trial and (2) admitting evidence of its safety recall in the fourth trial. We discuss each in turn.

### A.    *Motion for Summary Judgment After the Second Trial*

A trial court's ruling on a motion for summary judgment is reviewed de novo. *Sommers v. Philip Morris USA, Inc.*, 388 So. 3d 256, 260 (Fla. 3d DCA 2024). Generally, "an order denying summary judgment is not reviewable after final judgment." *Quest Diagnostics, Inc. v. Clarke*, 406 So. 3d 949, 950 (Fla. 4th DCA 2025). But an exception arises "where summary judgment is denied based on purely legal issues." *Id.* at 950 n.1 (citation modified); *see also* Fla. R. Civ. P. 1.510(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and *the movant is entitled to judgment as a matter of law*." (emphasis added)).

---

2.   A written order denying the motion was not rendered until June 13, 2024, after the third and fourth trials were held.

4

In Florida, the manufacturer of a defective product may be found liable under either negligence or strict liability theories. *See Grieco v. Daiho Sangyo, Inc.*, 344 So. 3d 11, 17 (Fla. 4th DCA 2022). In negligence, "the focus is on . . . whether a duty of care was owed to the injured parties, and whether the defendants breached that duty of care." *Id.* at 18 (citation omitted). Strict liability, on the other hand, "is not concerned with the reasonableness of a manufacturer's conduct" but "instead the focus is on the product itself and the reasonable expectations of the consumer." *Id.* (citation modified); *see also Davis v. Little Giant Ladder Sys., LLC*, No. 2:19-CV-780-SPC-NPM, 2022 WL 657062, at *5 (M.D. Fla. Mar. 4, 2022) ("[N]egligence focuses on defendant's conduct, while strict liability emphasizes the product and plaintiff's expectations.").

Under either theory, the plaintiff must establish a defect in the product. *Grieco*, 344 So. 3d at 17–18 (citation modified); *see also id.* at 18 ("Proof of a defect determines a breach of duty under a negligence theory and the presence of an unreasonably dangerous condition under a strict liability theory." (citation modified)). There are three distinct forms of possible defects: manufacturing defects, design defects, and warning defects. *See Force v. Ford Motor Co.*, 879 So. 2d 103, 106 (Fla. 5th DCA 2004).

To succeed on a strict liability design-defect claim, the plaintiff must show "the defective design . . . made the product unreasonably dangerous." *Grieco*, 344 So. 3d at 18. Further, "[t]he alleged design defect must also cause unforeseeable dangers during normal—that is, intended—use of the product." *Id.* at 19. The focus is on the consumer's expectations, meaning "a product is defectively designed if the plaintiff is able to demonstrate that the product did not perform as safely as an ordinary consumer would expect when used in the intended or reasonably foreseeable manner." *Id.* (quoting *Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 504 (Fla. 2015)).

In a negligent warning claim, however, "a product is considered defective when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings and their omission renders the product not reasonably safe." *Id.* at 20 (citation modified).

5

That is, a failure-to-warn claim, "boil[s] down to three elements—(1) the warnings accompanying the item were inadequate; (2) the inadequacy of the warnings proximately caused the injury; and (3) plaintiff suffered injury by using the product." *Davis*, 2022 WL 657062, at \*5 (citation modified). Thus, the plaintiff must "prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about." *Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1172 (Fla. 4th DCA 1998) (quoting *Anderson v. Owens-Corning Fiberglas Corp.*, 810 P.2d 549, 558 (Cal. 1991)).

Even a product that leaves the manufacturer without a design or manufacturing defect must have adequate warnings of its foreseeable risks. *See id.* at 1170 ("In the failure-to-warn context, an 'otherwise safe product' may be 'defective' solely by virtue of an inadequate warning." (quoting *Giddens v. Denman Rubber Mfg. Co.,* 440 So. 2d 1320, 1323 (Fla. 5th DCA 1983))); *Moorman v. Am. Safety Equip.*, 594 So. 2d 795, 801 (Fla. 4th DCA 1992) ("[P]roducts which are non-defective when they leave the manufacturer's plant may still be the subject of a claim of negligent failure to warn against the manufacturer for non-obvious defects which he can foresee appearing after normal use by the consumer or user."); *Cohen v. Gen. Motors Corp., Cadillac Div.*, 427 So. 2d 389, 390 (Fla. 4th DCA 1983) ("[A] warning of a known danger in a non-defective machine is required in the exercise of reasonable care.").

Nine months after the second trial, Suzuki moved for summary judgment alleging the defense verdict for the strict liability claim barred further litigation of the negligence claim because the jury found there was no design defect in the front braking system. Suzuki contends the negligence claim was explicitly presented as the failure to warn about the alleged design defects in the master cylinder and therefore the jury's verdict on the design-defect claim disposed of both claims.

But Winckler's claims were in fact more nuanced. Winckler asserted claims based on different (though similar) theories and distinct (but potentially interrelated) defects: (1) a strict liability

6

design-defect claim alleging the motorcycle's front braking system was unreasonably dangerous and (2) a negligence warning-defect claim based on Suzuki's breach of its duty to warn of the "foreseeable risks" of the front braking system. While the jury's finding on the strict liability claim *may* have resolved whether the front braking system was defective in design,[3] it did

---

3. For the second trial, the verdict form provided:

  1. Did Suzuki Motor Corporation *place the subject front brake master cylinder on the market with a design defect* which was a legal cause of loss, injury or damage to Scott Winckler?

  2. Was there negligence on the part of Suzuki Motor Corporation in *failing to warn about particular risks of the front brake master cylinder which Suzuki knew or should have known are involved in the reasonably foreseeable use* of the front brake master cylinder, which was a legal cause of loss, injury or damage to Scott Winckler?

(emphases added). The jury answered the first question in the negative but did not resolve the second.

In considering the effect of the jury's verdict on the strict liability claim, it is not for this or any court to guess whether the jury found the front brake was not defective in design at all *or* when it was placed on the market, or that Winckler failed to otherwise establish negligence per se. *See Grieco*, 344 So. 3d at 18 ("Strict liability means negligence as a matter of law or negligence per se, the effect of which is to remove the burden from the user of proving specific acts of negligence." (quoting *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 90 (Fla. 1976))); *cf. Coba v. Tricam Indus., Inc.*, 164 So. 3d 637, 648 (Fla. 2015) ("Any inconsistency in a verdict must be resolved by a jury—not a court attempting to guess the jury's intent."); *Moorman*, 594 So. 2d at 800 ("There is nothing unjust about refusing to relieve a party of its own failure to do something about an internal inconsistency in

7

not preclude consideration as to whether it was defective because of inadequate warnings. *Cf. Moorman*, 594 So. 2d at 801 (reasoning that jury's verdict for the defense on strict liability while finding for plaintiff on negligence could indicate jury found "the defect arose later . . . and that the manufacturer was therefore negligent in failing to warn of the potential hazard"); *see also Am. Cyanamid Co. v. Roy*, 498 So. 2d 859, 862 (Fla. 1986) (holding jury could have found negligent warning defect where only theories presented were negligent failure to warn and breach of warranty). Accordingly, the trial court denied Suzuki's motion because it found the jury's ruling on the design-defect claim revealed only that "the front brake master cylinder was not defective when Suzuki placed it on the market," which "does not preclude [Winckler's] claim of negligent failure to warn." Relying on *Moorman*, it specifically noted Suzuki still had a duty to provide "a warning of a known danger in a 'non-defective' machine."

Again, given the posture of this issue—an appeal of a summary judgment motion after subsequent trials—only "purely legal issues" are reviewable. *See Quest Diagnostics, Inc. v. Clarke*, 406 So. 3d 949, 950 & n.1 (Fla. 4th DCA 2025). Whether a duty is owed is a question of law, *Grieco*, 344 So. 3d at 22, which the trial court correctly decided, *see Moorman*, 594 So. 2d at 801; *cf. Scheman-Gonzalez v. Saber Mfg. Co.*, 816 So. 2d 1133, 1139 (Fla. 4th DCA 2002) ("Summary judgments should be granted with caution in negligence cases."). But whether warnings were adequate is generally a question for the jury. *See Edwards v. Cal. Chem. Co.*, 245 So. 2d 259, 263, 265 (Fla. 4th

_____

a verdict until long after the rendering jury had been discharged."); *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 241 (1998) ("[L]iability can exist under a failure-to-warn theory in cases in which the substantial modification defense . . . might otherwise preclude a design defect claim."). Winckler proposes several reasons the jury might have rendered the defense verdict that would not bar the negligent warning claim including that the jury could have found the motorcycle was not defective when Suzuki put it on the market but had risks that could develop over time depending on the owner's use and maintenance. *See Moorman*, 594 So. 2d at 801.

8

DCA 1971). *But see Hayes v. Spartan Chem. Co.*, 622 So. 2d 1352, 1354 (Fla. 2d DCA 1993) ("There are occasions when the adequacy of a warning is a question of law for the judge to decide. These occasions, however, are limited to circumstances in which the warning is 'accurate, clear, and unambiguous.'" (quoting *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 105 (Fla. 1989))). Because the adequacy of Suzuki's warnings of the foreseeable risks arising from the front braking system as designed was not "accurate, clear, or unambiguous," our review is limited. Thus, Suzuki failed to establish the trial court reversibly erred in denying summary judgment.[4]

---

4. On appeal, Winckler asserts Suzuki waived this issue because it is implicitly challenging the verdict as inconsistent. Were this Suzuki's claim, it would be unpreserved. *See Alvarez v. Rendon*, 953 So. 2d 702, 710 (Fla. 5th DCA 2007) ("To preserve the issue of an inconsistent verdict for review on appeal, the party claiming inconsistency must raise the issue before the jury is discharged." (citation omitted)). Further, in accepting the verdict form—which did not indicate that a decision on one claim could mean the exclusion of the other—and in requesting that the trial court accept the partial verdict, Suzuki failed to notify the court of their theory that the claims were definitively interrelated. Thus, the invited error doctrine would have applied. *See Gjokhila v. Seymour*, 349 So. 3d 496, 502 (Fla. 1st DCA 2022). But—as Suzuki correctly notes—the verdict was not legally inconsistent because the jury did not make a finding on the negligent warning claim. *Cf. Coba v. Tricam Indus., Inc.*, 164 So. 3d 637, 643 (Fla. 2015) (noting inconsistent verdict exists where "two definite findings of fact material to the judgment are mutually exclusive"). Thus, Suzuki's claim is not that the verdict was inconsistent but that the defense verdict on the design claim precluded the warning claim.

That said, Suzuki also waived the *preclusion* argument in failing to file a post-verdict motion under Florida Rule of Civil Procedure 1.480. Under the rule, Suzuki had fifteen days after the jury's verdict to move for judgment in accordance with its motion for directed verdict. *See* Fla. R. Civ. P. 1.480(b). Its failure to do so constituted waiver. *See Hartzog v. State*, 133 So. 3d 570, 573 n.3 (Fla. 1st DCA 2014) ("[A] pre-verdict motion for

*B.      Admissibility of Suzuki's Safety Recall in the Fourth Trial*

"A trial court's ruling on the admissibility of evidence is subject to an abuse of discretion standard of review, but the court's discretion is limited by the rules of evidence and the applicable case law." *Newman v. State*, 390 So. 3d 1262, 1264–65 (Fla. 5th DCA 2024) (citation omitted). "Discretion is abused when the judicial action taken is arbitrary, fanciful, unreasonable, or when no reasonable person would adopt the view taken by the trial court." *LaValley v. State*, 30 So. 3d 513, 515 (Fla. 5th DCA 2009).

On appeal, Suzuki asserts that the product recall evidence was inadmissible in the fourth trial because (1) the recall was

directed verdict does not itself preserve the point; after the verdict is returned, the movant must file another motion, *e.g.,* a motion to set aside the verdict and enter judgment in accordance with the motion for directed verdict."); *Roosevelt v. State*, 42 So. 3d 293, 298 (Fla. 3d DCA 2010) ("In order to preserve the point for appellate review, it was necessary that the defendant renew the motion at the conclusion of the case *and make the appropriate post-trial motion.*" (emphasis added)); *Adee Resort Corp. v. Brewer & Co.*, 653 So. 2d 1052, 1053 (Fla. 4th DCA 1995) ("Failure to timely file [a rule 1.480 motion] is a waiver."). Thus, Suzuki's assertion that the defense verdict on the design-defect claim precluded the warning-defect claim in a summary judgment motion filed *nine months later* was rightly denied. *Cf. CG Tides LLC v. SHEDDF3 VNB, LLC*, 388 So. 3d 1081, 1084 (Fla. 3d DCA 2024) ("Properly understood, summary judgment is akin to a pre-trial directed verdict."). Even if the motion was not waived *and* even if the trial court erred in denying the motion on the merits, Suzuki's affirmative actions led the court to view the claims as independent both in joining in the verdict form and asking the court to accept the partial verdict. *Cf. Rauch, Weaver, Norfleet, Kurtz & Co. v. AJP Pine Island Warehouses, Inc.*, 313 So. 3d 625, 632 (Fla. 4th DCA 2021) ("Under the invited-error doctrine, a party cannot successfully complain about an error for which he or she is responsible or of rulings that he or she has invited the trial court to make." (citation modified)).

irrelevant to Winckler's accident; (2) it was a subsequent remedial measure precluded by section 90.407, Florida Statutes; and (3) its admission was unfairly prejudicial in violation of section 90.403. We address each in turn.

### i.     Relevance

Suzuki argues the recall evidence was irrelevant because it addressed a defective condition—"spongy brakes"—unrelated to the "sudden and complete brake failure" that caused Winckler's accident. Florida law allows for the admission of "[a]ll relevant evidence . . . except as provided by law." § 90.402, Fla. Stat. (2024). Evidence is relevant if it "tend[s] to prove or disprove a material fact." *Id.* § 90.401.

By the fourth trial, the only remaining claim was negligent warning. Because the claim was built on a failure-to-warn defect, Winckler did not need to show that the product *itself* was defective. Instead, the "defect" to be proven was the product's inadequate warning of foreseeable risks. *See Giddens v. Denman Rubber Mfg. Co.*, 440 So. 2d 1320, 1323 (Fla. 5th DCA 1983) ("[A]n otherwise safe product may nevertheless be defective when no warning is given regarding the danger involved in a particular foreseeable use . . . ."); *Benavides v. Tesla, Inc.*, 804 F. Supp. 3d 1242, 1301 (S.D. Fla. 2025) ("Under Florida law, a product may be in a defective condition due to a defective warning." (citation modified)); *see also Grieco*, 344 So. 3d at 20 ("Unless the danger is obvious or known, a manufacturer has a duty to warn where its product is inherently dangerous or has dangerous propensities." (citation omitted)).

While a motorcycle is not an "inherently dangerous" product, its manufacturer has "a duty to warn of known dangers which are not otherwise fully appreciated by the user." *Byrnes v. Honda Motor Co.*, 887 F. Supp. 279, 280 (S.D. Fla. 1994); *see also High v. Westinghouse Elec. Corp.*, 610 So. 2d 1259, 1262 (Fla. 1992) ("[A] manufacturer has a duty to warn of dangerous contents in its product which could damage or injure even when the product is not used for its intended purpose."); *Advance Chem. Co. v. Harter*, 478 So. 2d 444, 448 (Fla. 1st DCA 1985) ("[I]f the particular injury is reasonably foreseeable, however rare, the manufacturer or seller has the duty to warn."); *NBIS Constr. & Transp. Ins.*

11

*Servs., Inc. v. Liebherr-Am., Inc.*, 93 F.4th 1304, 1312 (11th Cir. 2024) ("Florida's intermediate appellate courts have applied the duty to warn in various cases, including those involving goods with 'dangerous propensities.'") (collecting cases). Thus, Winckler had to establish Suzuki had a duty to warn him of foreseeable risks, Suzuki breached that duty by inadequate warning, the breach caused his injury, and he suffered damages. *See Grieco*, 344 So. 3d at 22 ("To prevail on a products liability claim based on negligence, a plaintiff must establish: (1) a duty or obligation recognized by the law requiring the defendant to protect others from unreasonable risks; (2) a breach of that duty; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damages.").

When notifying NHTSA of its safety recall, Suzuki explained that "[c]orrosion of the brake piston, inside of the front brake master cylinder, may result in a reduction of fluid pressure transmission to the front brake." As the associated consequence, Suzuki noted "front braking power may be reduced increasing the risk of a crash." Yet in the safety recall notices sent to owners, Suzuki focused on another symptom, "spongy brakes":

> After a long-term service life of the motorcycle without changing the brake fluid, the brake fluid can deteriorate and absorb moisture. The brake piston inside the front brake master cylinder of some motorcycles may not have uniform surface treatment. This combination of conditions can lead to corrosion of the brake piston. Corrosion of the brake piston generates gas, which may not be adequately purged from the master cylinder due to the side position location of the reservoir port. Gas remaining in the master cylinder can affect braking power by reducing proper fluid pressure transmission to the front brake. Over time, as gas continues to slowly accumulate above the reservoir port, the front brake lever may develop a "spongy" feel and stopping distances may be extended, increasing the risk of a crash.

In the frequently asked questions attached to the owners' notice, Suzuki wrote:

> 3. What symptoms could I have with my motorcycle related to this recall campaign?
>
> When you apply your front brakes, the front brake lever could feel spongy or have too much travel and your stopping distance may be extended. This sponginess builds over time and does NOT happen suddenly.
>
> 4. The brakes on my Suzuki seem to work just fine. Do I still need to have the recall performed and do I need to stop riding it?
>
> Yes. Even if the brakes seem to operate in a normal fashion and feel like they have adequate pressure, you should have the recall repair completed. We also recommend you don't ride the motorcycle until this repair is performed.

If the condition causing the risks was materially different than that described in the recall, it would be irrelevant. Here, however, "spongy brakes" was only one "symptom"—also known as "risk"—of the front braking system. Another foreseeable risk was extended lever travel, which occurred here. Thus, Winckler argued the condition that necessitated the recall also had foreseeable risks relevant to the accident.[5] In discussing the

---

5. The recall confirmed the motorcycle could develop reduced fluid pressure transmission to the front brake leading to "spongy brakes" *or* "too much travel" in the front brake lever, which could extend stopping distances. As to the possible "sponginess," Suzuki warned that it "builds over time and does NOT happen suddenly." But the recall did not address whether extended lever travel or stopping distance could occur suddenly. While Winckler denied that the accident was directly caused by spongy brakes, Barker testified he had experienced "sponginess" in his front brake multiple times before the crash. Evidence admitted at trial also revealed the corrosion-gas generation condition could return

expert testimony supporting its contention, Winckler argued "the distinction between spongy brakes and sudden loss of brake pressure is immaterial because they are simply different degrees of the same phenomenon: a reduction in braking pressure caused by air or gas in the braking system." This evidence is relevant to whether the motorcycle's master cylinder posed foreseeable risks. *Cf. Webster v. Body Dynamics, Inc.*, 27 So. 3d 805, 810 (Fla. 1st DCA 2010) (Thomas, J., dissenting) ("The 2004 ban [on ephedrine-containing products] does not conclusively prove that the products used in 1998 were in fact defective, *but it does tend to show that ephedrine alkaloids posed a significant threat.*" (emphasis added)) (dissenting regarding majority's finding that precluding evidence of recall was harmless error).

Other cases addressing this same recall—on which Suzuki relies—are distinguishable from the facts here. *See Soulliere v. Suzuki Motor Corp.*, No. G057266, 2020 WL 7223370, at *11 (Cal. Ct. App. Dec. 8, 2020) (finding admission of recall evidence relevant but unduly prejudicial where expert testimony linking motorcycle accident to recall was excluded); *Stubblefield v. Suzuki Motor Corp.*, 826 F. App'x. 309, 314 n.3 & 321–22 (5th Cir. 2020) (noting plaintiff withdrew failure to warn claim before closing arguments; affirming preclusion of recall evidence when offered to prove causation or feasible alternative design in design defect claim); *see also Jackson v. Suzuki Motor of Am., Inc.*, No. 8:23-CV-02189-FWS-JDE, 2024 WL 3914666, at *3 (C.D. Cal. July 9, 2024) (dismissing class action brought regarding 2020-2023 Suzuki models based on statutory consumer protection claims, fraud by concealment, and unjust enrichment).

Thus, the trial court did not abuse its discretion in finding the evidence was relevant.

---

even after brake fluid is replaced and that gas could stay in the closed system depending on the method used to change the brake fluid. Expert testimony also suggested the high temperatures generated from riding the motorcycle at the racetrack and vibrations from trailering it to Winckler's house could have accelerated generation and coalescence of larger gas bubbles in the brake line.

### ii. Subsequent Remedial Measures

Even if relevant, Suzuki asserts that the recall is a subsequent remedial measure inadmissible under section 90.407, Florida Statutes. Section 90.407 precludes evidence of remedial measures from being used to establish negligence or a product defect. *See* § 90.407, Fla. Stat. ("Evidence of measures taken after an injury or harm caused by an event, which measures if taken before the event would have made injury or harm less likely to occur, is not admissible to prove negligence, the existence of a product defect, or culpable conduct in connection with the event."). At the same time, the trial court maintains discretion to admit this evidence if offered for another purpose. *Id.* ("This rule *does not require* the exclusion of evidence of subsequent remedial measures when offered for another purpose, such as proving ownership, control, or the feasibility of precautionary measures, if controverted, or impeachment." (emphasis added)); *cf. Cavey v. Wells*, 313 So. 3d 188, 195 (Fla. 2d DCA 2021) ("This testimony would not *necessarily* be inadmissible as a subsequent remedial measure if it could be used for impeachment purposes or to prove the feasibility of precautionary measures." (emphasis added)).

Here, the issue was waived by Suzuki's failure to adequately address the trial court's reasoning in its initial brief. Before each trial, Suzuki filed motions in limine regarding the safety recall. In response to each motion, Winckler argued that the recall was either not a subsequent remedial measure *or* that it fell under the control and impeachment exceptions. The trial court denied the first motion explicitly finding the recall was a subsequent remedial measure but that it was admissible under the control exception, which might also be used for impeachment at trial. Each subsequent motion was also denied but with little explanation. When ruling on the fourth motion—the subject of this appeal—the trial court declared: "I don't think anything is new. I have the same ruling. The motion is denied." In its initial brief, Suzuki asserted only that the recall was inadmissible as a subsequent remedial measure, failing to challenge the exceptions on which the trial court explicitly relied in admitting the evidence. Thus, Suzuki waived this issue. *See Union Planters Bank v. Guardianship of Heft*, 866 So. 2d 1246

15

(Fla. 5th DCA 2004) (finding issue waived where appellant failed to "directly address the court's reasoning"); *see also D.H. v. Adept Cmty. Servs., Inc.*, 271 So. 3d 870, 880 (Fla. 2018) ("A trial court's ruling is treated as correct except insofar as an appellant raises claims of error. Points covered by a decree of the trial court will not be considered by an appellate court unless they are properly raised and discussed in the briefs. Claims of error not raised by an appellant in its initial brief are deemed abandoned." (citation modified)).

### iii. Unfairly Prejudicial

Even if otherwise admissible, Suzuki asserts the recall was unfairly prejudicial. "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403, Fla. Stat. Evidence of a product recall is likely to weigh on a jury's consideration, even with appropriate jury instructions regarding the limitations of proper use of subsequent remedial measures. Yet Suzuki failed to demonstrate the prejudice outweighed the probative value such that no reasonable person would have permitted this evidence to be admitted. *See LaValley v. State*, 30 So. 3d 513, 515 (Fla. 5th DCA 2009) ("Discretion is abused when the judicial action taken is arbitrary, fanciful, unreasonable, or when no reasonable person would adopt the view taken by the trial court.").

### CONCLUSION

Because the trial court did not err in denying summary judgment as to the negligent warning claim or in admitting the safety recall, we affirm.

AFFIRMED.

JAY, C.J., and LAMBERT, J., concur.

16

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____