793 So.2d 1018 (2001)
Thomas M. OWEN, Appellant/Cross-Appellee,
v.
Chester R. MORRISEY, Jr. and Laura Morrisey, his wife, Appellees/Cross-Appellants, and
Sylvia Vogel, as Personal Representative of the Estate of John B. Vogel, Deceased, and Jack Vogel Simulated Brick and Stone, Inc., Appellees.
No. 4D00-1773.
District Court of Appeal of Florida, Fourth District.
July 11, 2001.
Rehearing Denied October 3, 2001.
Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., Pompano Beach, and Douglas DeAlmeida of Neale & DeAlmeida, P.A., Fort Lauderdale, for appellant/cross-appellee.
Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., Palm Beach Gardens, and Lorenzo Williams and Paul P. McMahon of Gary, Williams, Parenti, Finney, Lewis & McManus, Fort Pierce, for Appellees/Cross Appellants Chester R. Morrisey, Jr. and Laura Morrisey, his wife.
HAZOURI, J.
The Defendant, Thomas Owen, appeals the final judgment in favor of the Plaintiffs, Chester R. Morrisey and Laura Morrisey, his wife, maintaining that the jury's verdict is inconsistent, excessive and contrary to the manifest weight of the evidence. We conclude that the verdict was inconsistent and excessive and the trial court abused its discretion in failing to grant a new trial on causation and damages. Accordingly, we reverse and remand for a new trial on those issues.
On November 29, 1993, Joseph Paul was driving a 1973 F 350 pickup truck southbound on I 95 south of Forest Hill Boulevard in West Palm Beach, Florida, in the course and scope of his employment. The truck was owned by his employer, Jack Vogel Simulated Brick & Stone, Inc. (Vogel)[1]. According to Paul, as he was coming downhill on the Forest Hill Boulevard overpass, he felt the truck shake and observed the two right rear wheels "fly off" the truck. He managed to pull his vehicle partially onto the emergency lane; however, a portion of the vehicle obstructed southbound traffic on 1-95.
*1019 Also on the highway that morning was Chester Morrisey, driving a semi-tractor trailer loaded with household furnishings. Mr. Morrisey was employed by Daley and Wanzer, a moving company, and was driving in the course and scope of his employment. Traveling behind Morrisey's vehicle in the center lane of I 95 was another semi-tractor trailer owned and operated by Thomas Owen. As the traffic in front of Morrisey slowed due to Paul's mishap, Morrisey was able to bring his vehicle to a stop without colliding with any other vehicle; however, Owen was unable to stop his vehicle and collided with Morrisey's vehicle.
The defendants stipulated that Morrisey was not negligent. The issue of negligence presented to the jury was the extent and nature of any negligence of Owen in failing to stop, any negligence of Paul in failing to pull the truck off the highway and any negligence of Vogel for improper maintenance of the tires on the truck. The jury found the following percentages of negligence: Owen 45%, Vogel 35% and Paul 20%. Although the negligence between Owen and Vogel was contested during the trial, Owen acknowledges in his brief that upon reversal it is unnecessary to retry the percentage of negligence of each defendant. There is sufficient evidence to support the jury's apportionment of fault.
Owen contends that the primary issue before the jury was whether Morrisey was injured in the accident and if so, whether the condition that Morrisey was suffering from at the time of trial was caused by the accident or whether it resulted from prior back injuries unrelated to the vehicular accident on November 29, 1993. In addition to the jury returning a verdict for the above stated percentages of negligence, the jury also found that as a result of the accident in question, Morrisey had sustained past medical expenses of $151,962.11; lost earnings of $160,081; future medical expenses of $1,234,640 over a 30 year period with a present money value of $488,000; future lost earning ability of $1,555,000 over a 20 year working life expectancy reduced to a present money value of $1,006,000 for a total of past and future economic damages of $1,806,043.11. The jury also found that Morrisey did not sustain a permanent injury within a reasonable degree of medical probability as a result of the incident in question. The verdict form instructed the jury to skip questions 8 and 9 which dealt with past and future non-economic damages for Chester Morrisey and Laura Morrisey since no permanency was found.
Owen's motion for a new trial was denied and after the trial court determined setoffs for collateral sources, a final judgment was entered against Owen and Vogel in the amount of $1,779,247.84.
At trial, it was undisputed that Morrisey had back complaints prior to the accident; however, he contended that those complaints were not serious and had not impaired his ability to perform the activities of daily living including his employment as a furniture mover. It was also undisputed that Morrisey had significant back problems and had undergone extensive medical treatment after the accident. Following the accident of November 29, 1993, Morrisey underwent two major surgical procedures that resulted in a failed back syndrome which ultimately led to an operation where a morphine pump was permanently implanted in order to control his pain.
Each party had an opportunity to call numerous expert witnesses. There was sufficient testimony presented by the defendants and the plaintiffs to support their respective positions. At the conclusion of all testimony and argument, the jury was provided with standard jury instructions *1020 and a verdict form detailing the issues to be resolved.
The first question on the verdict form asked, "Was there negligence on the part of Thomas Matthew Owen, Jack Vogel Simulated Brick & Stone, Inc. or Joseph Paul which was a legal cause of loss, injury or damage to the Plaintiff, Chester Morrisey?" As to each defendant, the jury answered "Yes."
Question 2 asked the jury to state the percentage of negligence charged to the various defendants, which was answered as noted heretofore. Questions 3, 4, 5 and 6 asked the jury to assess past and future economic damages which was also answered as previously noted. The jury was then asked in question 7, "Did Chester Morrisey sustain a permanent injury within a reasonable degree of medical probability as a result of the incident in question?" The jury answered "No."
Owen acknowledges that under the evidence presented in the case, the jury could rightfully have found Morrisey sustained past and future economic damages without finding a permanent injury. However, Owen argues that an award of all future economic damages including medical expenses which extend over Morrisey's life expectancy of 30 years and an award of the future loss of earning ability for Morrisey's working life expectancy of 20 years is inconsistent, excessive and contrary to the manifest weight of the evidence.
Morrisey presented the testimony of orthopedic surgeons, neurosurgeons, a biomechanical engineer, a vocational/rehabilitation counselor and a forensic economist to support the propositions that the accident had caused serious injuries, that he was going to suffer substantial medical expenses for the remainder of his 30-year life expectancy and that he was totally disabled and unemployable. Morrisey argues the trial court was correct in denying the motion for a new trial because in Auto-Owners Insurance Co. v. Tompkins, 651 So.2d 89 (Fla.1995), the Florida Supreme Court held that a finding of permanent injury is not a prerequisite to recovery of future economic damages. Morrisey also argues that the jury instructions and verdict form, which were given in this case and are standard for personal injury cases such as this, clearly permit a jury to award future economic damages without finding a permanent injury. Morrisey further argues that a finding of a permanent injury is only a prerequisite when assessing non-economic damages such as pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, aggravation of a disease or physical defect, or loss of capacity for the enjoyment of life. These non-economic damages are precluded under section 627.737(2), Florida Statutes (1993),[2] absent a finding of a permanent injury; however, there is nothing in section 627.737(2) that precludes an *1021 award of future economic damages without a permanent injury.
In Tompkins, the Florida Supreme Court reviewed the second district's opinion which held that the trial court erroneously instructed the jury that the respondent, Tompkins, must have suffered a "permanent injury" to recover future economic damages. Speaking on behalf of the court, Justice Overton stated:
We find that, in order to recover future economic damages, a claimant must establish only that future economic damages are reasonably certain to occur. While proving a permanent injury can be an important factor in establishing that such damages are reasonably certain to occur, it is not an absolute prerequisite.
Tompkins, 651 So.2d at 90 (emphasis added).
Tompkins had been injured in a motor vehicle accident involving an uninsured motorist. After settling with the tortfeasor for his liability limits of $25,000, Tompkins filed suit for underinsured motorist benefits against his own insurance carrier, Auto Owners Insurance Company. Liability was admitted and the case proceeded to trial on the issues of causation and damages. As in the instant case, the parties in Tompkins presented conflicting evidence concerning the permanency of Tompkins' injuries and the amount of his past and future economic damages. Tompkins requested that the trial court instruct the jury that they were allowed to award future economic damages even if they failed to find that Tompkins had suffered a permanent injury. The trial court denied Tompkins' request and, over objection, gave a jury instruction that required the jury to find a permanent injury within a reasonable degree of medical probability in order to award future economic damages. The jury found that Tompkins had not suffered a permanent injury and awarded only past economic damages.
On appeal, the second district reversed the trial court and held the trial court erred in instructing the jury that future economic damages were recoverable only if Tompkins had sustained a permanent injury. The second district's holding conflicted with Josephson v. Bowers, 595 So.2d 1045 (Fla. 4th DCA 1992). In Josephson, this court held that there must be a "permanent injury before a defendant may be held liable for future loss of income and other future damages in a personal injury claim." Id. at 1046. In resolving the conflict between this court and the second district, Justice Overton again speaking for the court stated:
We reject the mandatory permanent injury threshold test for future economic damages and find the appropriate test is to permit the recovery of future economic damages when such damages are established with reasonable certainty. Although a permanent injury is not a prerequisite to recovering future economic damages, it is a significant factor in establishing the reasonable certainty of the future damages. We note that our decision appears to be fully consistent with the note following the standard jury instructions on damages. See Standard Jury Instructions-Civil Cases, 613 So.2d 1316, 1317 (Fla.1993) (notes on use)(limiting the recovery of future medical expenses or loss of earnings to damages the claimant is "reasonably certain to [incur] [experience] in the future").
We reject Auto Owners' contention that future economic damages for non-permanent injuries should be denied because of the difficulty in establishing the certainty of such damages. We find that a per se rule requiring a permanent injury may unjustly prevent a claimant *1022 from recovering for post-trial damages that result from non-permanent injuries that can be established with reasonable certainty.
Tompkins, 651 So.2d at 91 (emphasis added).
What Morrisey would have us do is to construe the supreme court's decision in Tompkins to stand for the proposition that a jury may award future economic damages without a finding of permanent injury, and further that Tompkins establishes a per se rule that a jury may award future economic damages which are intended to compensate an injured person for all post-trial economic damages, even those which are intended to compensate an injured person for his or her life expectancy and work life expectancy without there being a permanent injury to justify such an award. We do not believe Tompkins authorizes such a result. Although Tompkins permits the award of future economic damages without a finding of permanent injury, Justice Overton repeatedly notes that "a permanent injury is a significant factor in establishing the reasonable certainty of the future damages." Id. As unjust as it might be to prevent a claimant from recovering for post-trial economic damages that result from non-permanent injuries, so too would it be unjust to permit a claimant to recover all future economic damages for his or her life expectancy and work life expectancy without a finding of a permanent injury. Under the facts of the instant case, a finding of a permanent injury is essential to establish these damages with reasonable certainty.
Prior to Tompkins, the second district decided Ludwig v. Ladner, 637 So.2d 308 (Fla. 2d DCA 1994), which we find instructive. Mr. Ladner was injured in an automobile accident on October 19, 1987. He sued Mr. Ludwig, the driver of the other car. Mrs. Ladner sought damages for loss of consortium. The parties vigorously tried the issue of permanency. Mr. Ladner's treating neurologist opined his patient suffered a permanent back injury. Two doctors who performed medical examinations for the defense testified that Mr. Ladner sustained no permanent injury.
The jury returned a verdict finding that Mr. Ladner had not passed the no-fault threshold of permanency. The jury awarded him $20,000 in past medical expenses, $225,000 in past loss earnings, $24,000 in future medical expenses and $70,000 in lost future earning ability. The jury determined that the future damages would provide compensation over a period of twenty years, but made no reduction for those damages to present value. While the jury found that Mr. Ladner sustained no permanent injury, it nevertheless decided that the injuries that he had sustained would cause him to incur losses for the rest of his life. Because it had determined that Mr. Ladner had not passed the thresholds, the jury did not award him damages for pain and suffering and did not award damages to Mrs. Ladner. Mr. Ludwig's motion for new trial was denied and the trial court entered a judgment on the verdict in the amount of $339,000.
In reversing the trial court and finding that the verdict was inconsistent and excessive, Judge Altenbernd, speaking for the court stated:
The record in this case suggests that the parties may have misunderstood the reason for the new standard jury instruction. The committee's notes on use concerning the recent amendments to the no-fault jury instruction indicate that an instruction on future damages may be needed when there is evidence that a plaintiff may incur future economic losses even if the injury is not sufficient to pass the no-fault thresholds. Normally, such an instruction will be needed only when a jury could reasonably determine *1023 that a plaintiff has not reached "maximum medical improvement and will have a limited period of future lost income or medical expenses." Fla. Std. Jury Instr. (Civ.) 6.1 notes on use at 6. The committee's notes on use are supported by precedent.
. . .
[T]he jury instructions explaining the future damages awardable in the absence of a finding of permanent injury should be prepared with care. The committee did not propose standard language to describe these damages. It would seem appropriate for the instructions to explain to a jury that such future damages should be awarded for only the limited period between the time of trial and the time when the plaintiff is expected to reach maximum medical improvement. When the parties actually intend to give the jury the option of finding limited future period of recovery from a non permanent injury, it may be useful to provide additional questions on the interrogatory verdict form to establish the expected period of recovery.
In this case, it is obvious that the jury awarded past medical expenses exceeding the damages established by the evidence. The past lost earnings are, at best, contrary to the manifest weight of the evidence. The future damages are excessive if the jury in fact determined that Mr. Ladner sustained no permanent injury. In light of the jury's finding that Mr. Ladner's future damages would be incurred over a recovery period equal to his expected life-span, we are unwilling to assume that the jury understood and followed the law in deciding whether his injury is permanent.
Id. at 310-11 (footnote omitted).
Although some may question whether Ludwig v. Ladner survived the supreme court's opinion in Tompkins, see Stephenson-Noland v. Nadd, 670 So.2d 1197 (Fla. 5th DCA 1996), we find nothing in Tompkins to detract from Judge Altenbernd's reasoning. Although a finding of a permanent injury is not a prerequisite for an award of future economic losses, it also cannot be ignored. In the instant case, the jury's award of future economic damages is inextricably linked to the evidence of a permanent injury. Without the finding by the jury of a permanent injury, this verdict is inconsistent and excessive and must be reversed.
Morrisey cites to three district court cases decided after Tompkins which he contends support the proposition that all future economic damages, even those damages that are intended to compensate a claimant for the rest of his or her life, are recoverable without a finding that the claimant sustained a permanent injury. He cites to Kent v. Bucholc, 714 So.2d 671 (Fla. 4th DCA 1998), Hamilton v. Melbourne Sand Transport, Inc., 687 So.2d 27 (Fla. 5th DCA 1997), and Metrolimo, Inc. v. Lamm, 666 So.2d 552 (Fla. 3d DCA 1995). A close examination of these decisions does not support this proposition.
In Kent, there is an insufficient description of the facts to support Morrisey's argument. Mr. Bucholc was involved in an automobile accident and his expert witnesses testified that he had a permanent injury and would incur medical expenses in the future. The jury awarded him $13,000 in past medical expenses and $50,000 in future medical expenses but found that he did not sustain a permanent injury. Kent argued that because there was no finding of permanency, the award of future medical expenses was contrary to the manifest weight of the evidence and the trial court should have granted a new trial. This court held that the trial court did not abuse its discretion in denying the motion for a new trial and cited Tompkins as authority for the proposition that a finding *1024 of a permanent injury is not a prerequisite for an award of future economic damages. There is no description in the opinion as to what the future medical expenses consisted of nor over what period of time these medical expenses were expected to be incurred.
In Metrolimo, Betty Lamm was involved in an automobile accident in which she claimed she had sustained personal injuries. Over Metrolimo's objection, the jury was instructed that even if Lamm had no permanent injury, the jury could nonetheless award damages for future medical expenses and nursing care. The jury returned a verdict without finding a permanent injury and awarded $150,000 in future medical expenses and nursing care.
On appeal, Metrolimo contended that the jury should not be permitted to award future medical expenses and nursing care without also finding a permanent injury. The third district stated:
During the pendency of this appeal, the Florida Supreme Court announced Auto-Owners Insurance Co. v. Tompkins, 651 So.2d 89 (Fla.1995). The court there held that a permanent injury is not a prerequisite to recovering future economic damages. Id. at 91. "[T]he appropriate test is to permit the recovery of future economic damages when such damages are established with reasonable certainty." Id. That being so, the trial court was correct in overruling Metrolimo's objection.
Metrolimo next argues that assuming that an award of damages for future medical expenses and nursing was permissible, the evidence was insufficient. We disagree. Evidence was presented regarding the cost of nursing care which the plaintiff currently receives. Evidence was also presented regarding the present day cost of other care alternatives, such as an adult congregate living facility. The amount awarded by the jury is within the range testified to by the plaintiff's witnesses. Metrolimo contends that the evidence was insufficient under this court's decision in Nuta v. Genders, 617 So.2d 329 (Fla. 3d DCA 1993). That case found that there was insufficient evidence to support the jury's verdict on the question of, inter alia, future medical expenses. However, in that case, "[n]one of the doctors testified that [plaintiff] needed future medical treatment." Id. at 331. Without an indication of what further medical treatment the plaintiff would need, the jury did not have a basis to make an award. Here, by contrast, the witnesses testified as to the current rates being paid for nursing care. There was medical and lay testimony as to the future need for such care. We conclude that there was an adequate evidentiary basis for future damages as required Auto-Owners.1
FN1. In additional memoranda ordered by this court after the Auto-Owners decision was announced, Metrolimo has argued that the award in this case covers all, or substantially all, of the remainder of the plaintiff's life expectancy, and is therefore excessive. See Ludwig v. Ladner, 637 So.2d 308, 310-11 (Fla. 2d DCA 1994). As we view the record, that is not an argument which was made in the trial court. The argument made to the trial court was that absent a finding of permanent injury, no future economic damages could be awarded at all. Accordingly, we do not reach the argument made under Ludwig, and need not consider the extent to which Ludwig remains viable after the decision in Auto-Owners.
Metrolimo, 666 So.2d at 553.
As can be seen from the footnote, the third district was not confronted with the *1025 argument, and therefore did not address, whether Tompkins would authorize an award of future economic damages which covered all, or substantially all, of the remainder of the plaintiff's life expectancy.
In Hamilton, the plaintiff, Hamilton, appealed the trial court's order granting Melbourne Sand Transport's (MST) motion for remittitur and/or a new trial. MST moved to reduce the total jury verdict of $200,000 because the jury found Hamilton did not sustain a permanent injury, and, therefore, the jury award of $150,000 for future medical expenses and future loss of earning ability was inconsistent and not legally supportable. The trial court granted the motion and reduced the total award to $50,000 or allowed Hamilton to proceed to a new trial. Hamilton declined the award, appealed and argued that the trial court erred because there was sufficient evidence to support a claim for future damages.
Hamilton was injured in an automobile accident when a tractor-trailer driven by an employee of MST ran a red light and struck his car on the driver's side, forcing the door to the steering wheel. MST did not contest liability. As a result of the accident, Hamilton suffered a pinched nerve in his neck, swelling in his lower back, and reduced motion in his left knee. He underwent surgery on his knee and eventually lost his job because, due to his injuries, he was unable to do the work he had done before the accident. During the trial, Hamilton called several physicians who testified that he needed the knee surgery as a result of the accident and that he may need back surgery if he exacerbates the disc injuries. Absent further injury, however, only a home traction program would be necessary. A physician further testified that Hamilton may need surgery for mild to moderate carpal tunnel syndrome resulting from the accident. No physician testified that future surgery was probable for any of the injuries sustained. In fact, an orthopedic surgeon hired by MST to do a medical examination testified that Hamilton would not require formal medical treatment or physical therapy for his neck and back, and there was nothing to indicate that Hamilton would require future treatment for injury to his knee.
Hamilton also presented evidence that his income and income potential had decreased after the accident. Hamilton testified that he earned $25,400 in 1989, $31,917 in 1990, $31,716 in 1991 and $14,659 in 1992 after he was injured in December 1991. In 1993, two years after the accident, Hamilton earned a salary of $26,650. His former employer testified that Hamilton was a hard worker and would have enjoyed job security as long as he was able to perform his job. He testified that an employee with Hamilton's skill working 70 hours a week, earned $48,900 in 1992 and $43,000 in 1993. Hamilton would have been able to earn those amounts during 1992 and 1993 had he continued to work for him. He testified that the only reason Hamilton was released from his job was because he was physically unable to do the work.
In reversing the trial court and reinstating the verdict, the fifth district concluded that Hamilton had proved the future damages independent of a permanent injury and accepted Hamilton's contention that Tompkins permits a jury to return a verdict for future economic damages which are reasonably certain to occur without a finding of permanency. The court rejected MST's argument that there was no competent evidence to support an award for 43 years[3] of future medical expenses *1026 and lost earnings. In rejecting this argument, the court stated:
In this case, Hamilton presented proof of injuries, albeit not permanent, and proof of future loss of earnings. He was able to establish, with reasonable certainty, that he would continue to suffer decreased wages in the future. Based upon the testimony of Hamilton and his employer, the jury could have determined that Hamilton would suffer a loss of approximately $5,000 per year over a thirty-year period he is expected to work which would amount to $150,000. Therefore, the award for future damages was consistent with the record evidence, and there was a reasonable basis for the jury to award $150,000 for Hamilton's loss of future earning ability.
Hamilton, 687 So.2d at 28-29.
Although the Hamilton decision acknowledges that Tompkins holds that a permanent injury is an important factor in establishing that economic damages are reasonably certain to occur, the court fails to explain how Hamilton could sustain future medical expenses over a 43 year period and a loss of $5,000 a year for a 30 year period, presumably his working life expectancy, for a total of $150,000, without sustaining a permanent injury. How is it that a person can continue to incur medical expenses over a 43 year period and a $5,000 a year loss of earnings over a 30 year period without sustaining a permanent injury? Since it is unclear to us how the Hamilton court arrived at its decision, we find it unpersuasive.
Having concluded that the verdict must be reversed, we address what issues need to be retried. In answering question 1 on the verdict form, the jury concluded that all the defendants were negligent and that that negligence was a legal cause of loss, injury and damage to the plaintiff. Although negligence and causation are combined in this single question, we see no basis in the record to require a retrial on the issue of negligence and the percentage of fault attributable to each defendant[4]. However, causation is inextricably entwined with the extent and nature of the damages and on retrial, the case should be treated as one in which the trial court has directed a verdict on negligence and it remains for the jury to determine what damages, permanent or non-permanent, were caused by the negligence. As to the other points raised on appeal by Owen, we find no error and affirm the trial court. Morrisey's cross appeal as to the appropriate amount of set-off for collateral sources is moot since we are reversing for a new trial on causation and damages.
Affirmed in part and reversed in part.
MIHOK, A. THOMAS, Associate Judge, concurs. SHAHOOD, J., concurs in part and dissents in part with opinion.
SHAHOOD, J., concurring in part and dissenting in part.
I agree with the well written majority opinion in all respects except the final paragraph. Because negligence and causation were combined in question 1 on the verdict form, and the verdict was admittedly inconsistent and excessive, I would reverse for a new trial on all issues.
NOTES
[1] Vogel and Paul, who were also defendants below, settled with Morrisey and are not parties to this appeal.
[2] Section 627.737(2), Florida Statutes (1993), provides:

(2) In any action of tort brought against the owner, registrant, operator, or occupant of a motor vehicle with respect to which security has been provided as required by ss. 627.730-627.7405, or against any person or organization legally responsible for his acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish, and inconvenience because of bodily injury, sickness, or disease arising out of the ownership, maintenance, operation, or use of such motor vehicle only in the event that the injury or disease consists in whole or in part of:
(a) Significant and permanent loss of an important bodily function.
(b) Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement.
(c) Significant and permanent scarring or disfigurement.
(d) Death.
[3] It is unclear in the opinion where the 43 year period comes from. Presumably that is Hamilton's testified to life expectancy.
[4] The apportionment of fault becomes applicable on retrial only if the jury finds a permanent injury and awards non-economic damages to the plaintiffs. See § 768.81(3) Fla. Stat.(1993). There was no issue at trial that separate acts of negligence on the part of any of the defendants caused separate and distinct damages. Therefore, the 45% apportionment of fault is fixed for Owen.