49 So.3d 272 (2010)
PROGRESSIVE SELECT INSURANCE COMPANY, INC., Appellant,
v.
Michele Mason LORENZO, Appellee.
No. 4D09-127.
District Court of Appeal of Florida, Fourth District.
September 1, 2010.
*273 Robert I. Buchsbaum of Kramer, Green, Zuckerman, Greene & Buchsbaum, P.A., Hollywood, for appellant.
Theodore J. Leopold, Jodi C. Page and Diana L. Martin of Leopold-Kuvin, P.A., Palm Beach Gardens, for appellee.
MAY, J.
An insurer appeals a jury verdict in an uninsured motorist case. It argues the trial court erred in denying its motions for new trial and remittitur. We agree and reverse.
An uninsured motorist rear-ended the plaintiff's vehicle. When the plaintiff's insurer did not tender its uninsured motorist coverage upon demand, the plaintiff filed a complaint against the insurer. The insurer admitted the existence of coverage, but claimed the plaintiff's injuries were pre-existing and not caused by the accident.
The plaintiff presented testimony from multiple doctors, who testified that the accident aggravated the insured's preexisting herniated discs, making them symptomatic for the first time. The plaintiff and her husband also testified.
The plaintiff admitted that she did not strike anything inside of her vehicle during the accident. She sustained no cuts or bruises; she told the other driver she was okay. She did not seek medical treatment immediately following the accident, but she began experiencing pain and muscle stiffness in her neck later that night. She went to an urgent care facility a few days later.
Eight months later, the plaintiff was seen by a chiropractor. She did not provide the chiropractor with any medical records; he was unaware of her prior medical condition.
Two years later, a pain doctor performed two epidural steroid injections, which revealed evidence of disc disease and arthritis. He reported the plaintiff was suffering from nerve entrapment in the back going down to the right leg and bilateral lumbar facet arthritis, a degenerative condition in the form of bony spurs in the spine, with drying out of spinal discs. He testified that multiple level disc herniations and bulges are more likely caused by aging than trauma.
A physiatrist, specializing in physical medicine and rehabilitation, reviewed x-ray and MRI films taken before and after the accident. He testified:
This is at this point a non-surgical patient, number one; number two, with a history of a neck and back problem secondary *274 to injuries; and number three, she's got some preexisting conditions.
. . . .
This accident does not cause herniated discs. These herniated discs were there before the accident.
But what this accident did, it caused this pre-existing condition that was relatively asymptomatic to be symptomatic. In other words, the frequency, the duration and the intensity of her pain changed.
He testified that the plaintiff had a permanent increase in the frequency, duration, and intensity of her neck and back pain as a result of the accident, and sustained a thirteen-percent impairment. He opined that the plaintiff would have a five-year reduction in work life expectancy.
The plaintiff's forensic economist offered two models for future medical care costs. The economist testified that his opinions were based on the physiatrist's opinions concerning the plaintiff's condition and need for medical care. In his more conservative approach, he estimated future medical expenses of $514,750. In his more expensive model, including surgical intervention, he estimated the cost to be $745,107.
If the plaintiff was required to stop working five years early due to her injuries, she would lose approximately $135,300 in salary, plus an estimated ten to twenty-five percent reduction in vocational capacity, i.e., the lack of opportunity to get new jobs, for which he added another $115,667. When these two additional amounts were added to the more expensive cost of medical care, the total lifetime future losses totaled $958,229. Adding past medical expenses of $53,391, the economist testified to total damages of $1,017,657.
The defense expert, an orthopedic surgeon, testified that he examined the plaintiff and found nothing abnormal. At most, the plaintiff might have suffered a temporary exacerbation of preexisting conditions from the accident, but not a permanent aggravation or new injury, and certainly not an aggravation to the degeneration in her lumbar spine.
It is my opinion based on the review of the medical records; the chronology of medical records; the MRI studies; her prior history; the findings a year before  the MRI findings the year before and afterwards and subsequently that Ms. Lorenzo did not sustain any permanent injury, aggravation or new injury or impairment from the accident of March 11, 2006.
He opined the plaintiff "does not need any ongoing medical treatment in chiropractic, in physical therapy, base procedures, surgery or any other treatment as a result of this accident." He placed no activity or work-related restrictions on the plaintiff.
During cross-examination, plaintiff's counsel asked the defense expert a series of questions concerning the doctor's use of foreign help to transcribe his medical records. Specifically, the doctor was asked to explain why he sends his dictation to India to be transcribed. Plaintiff's counsel also asked a series of questions concerning the defense expert's insistence that plaintiff disrobe and wear a flimsy paper robe during the examination, insinuating that the doctor had some perverse sexual orientation. Defense counsel immediately objected to the second line of questioning as argumentative, inappropriate, and highly inflammatory.
The trial court held a sidebar conference, sustained the objection, but denied the request for a curative instruction. The court also denied the defense motion for mistrial. The court commented: "This is  I'll tell you truthfully, that made me uncomfortable. And I think it does prejudice *275 the jury." After further questioning, defense counsel renewed his motion for mistrial. Once again, the trial court denied the motion.
The defense then played the video deposition of a radiologist, who testified that the MRI images revealed abnormalities prior to the accident that were not related to trauma, but from degenerative disc disease. The MRIs done after the accident revealed a "drying out process" in the disc space that occurs over a long period of time, and was not caused by the accident.
The court denied the insurer's motion for directed verdict on past medical bills and on permanency. During deliberations, the jury had many questions, which were returned unanswered. It ultimately returned a verdict finding causation, but NO permanent injury. The jury awarded past medical expenses of $53,391 and future medical expenses of $514,750. It awarded nothing for future loss of earnings, past pain and suffering, or future pain and suffering.
When the jury returned with its verdict, the court noticed the jury had failed to total the verdict. The court returned the verdict form to the jury, instructing it that "the last line, it says `TOTAL.'" When the jury returned to deliberate, the trial court inquired if there was any irregularity in the verdict. Plaintiff's counsel answered "no." Defense counsel responded: "From a form standpoint, Your Honor ... other than the total, no. From an evidentiary standpoint, yes. But that argument is for another day." At that point, plaintiff's counsel stated: "Neither party is waiving their right on other issues."
When the jury returned, it totaled the numbers and reached a verdict of $568,141. Defense counsel then asked the court to poll the jury to insure that the award was for future medical treatment. After some discussion, the court agreed to poll the jury, but not to ask a specific question about the damage amount.
The insurer filed a Motion for New Trial, Renewed Motion for Directed Verdict or, in the Alternative, Motion for Remittitur. The latter motion argued that the verdict was excessive because the jury awarded lifetime future medical expenses without a finding of permanency. The court denied the motions. With respect to the argument that the award of lifetime future medical expenses was excessive, the court stated:
On the argument by the Defendant of an inconsistent verdict, the Court in fact agrees with the Defendant that the jury in its verdict found no permanent injury and entered an inconsistent verdict by awarding $514,750.00 for medical expenses to be sustained in the future. The Court finds that the jury awarded medical expenses in the future as if the Plaintiff had sustained a permanent injury which the jury found that the Plaintiff had not. Though the case law permits an award of future economic damages without a finding of permanent injury, a permanent injury is a significant factor in establishing a reasonable certainty of the future damages. This underlying theory is set forth in Owen v. Morrisey, 793 So.2d 1018 (Fla. 4th DCA 2001),. ...
Although a finding of a permanent injury is not a prerequisite for an award of future economic losses, it also cannot be ignored.
This Court finds that the verdict was inconsistent and had the Defendant objected to the verdict and claimed that it was inconsistent at the time of trial, this Court would have considered its Motion at that time and would have resubmitted the issue to the jury affording the jury an opportunity to correct the inconsistency. See, Lucas v. Orchid Island *276 Props., 982 So.2d 758 (Fla. 4th DCA 2008).
The court entered a final judgment for $100,000, the amount of coverage, and subsequently awarded costs of $21,195.57. From this judgment, the insurer now appeals.
The insurer argues the trial court erred in denying its motion for a mistrial based on the cross examination of the defense expert, which attempted to show the expert was: (1) "un-American" by outsourcing transcription jobs to India; and (2) a sexual predator or pervert because he made the examinees wear "a very thin piece of paper cloth over their body." The plaintiff responds that the trial court acted within its discretion in denying the motion for mistrial on this ground. We agree and find no error in the court's handling of this issue.
The insurer next argues that because the jury found no permanent injury, the award of damages for future medical treatment was excessive. Further, the insurer argues that the excessive verdict also resulted from the incendiary and inflammatory impeachment of the defense expert, as noted by the trial court during the post-trial hearing: "[T]he questioning of [the defense expert] by the Plaintiff's counsel was prejudicial to the Defense's case as a result of the fact that [the defense expert] was in large part the entirety of the defense's case."
And last, the insurer argues the trial court abused its discretion in failing to order a remittitur because "only medical expenses which are reasonably certain to be incurred in the future are recoverable." Truelove v. Blount, 954 So.2d 1284, 1287 (Fla. 2d DCA 2007) (quoting Loftin v. Wilson, 67 So.2d 185, 188 (Fla.1953)). Here, the award of future medical expenses is excessive based on the jury's finding of no permanent injury.
The plaintiff responds that the insurer failed to preserve the excessiveness issue because it really is an inconsistent verdict argument in disguise. Because the insurer did not object to the inconsistent verdict before the jury was excused, it waived the issue. Alternatively, the verdict is not excessive as it is supported by the evidence.
We first address preservation. Looking back over almost eighty years of Florida case law reveals a consistent goal of ensuring that "the intent of the jury in rendering the verdict may fairly and with certainty be gleaned from the words used. ..." Gen. Motors Acceptance Corp. v. Judge of Circuit Court, 102 Fla. 924, 136 So. 621, 622 (1931). To that end, Florida courts have required any objection to the form of the verdict to be made before the discharge of the jury to allow correction of a correctable error. Higbee v. Dorigo, 66 So.2d 684, 685 (Fla.1953). When that verdict is rendered and "no objection appears to have been made to the form of verdict when the same was presented to the court, the form thereof was waived." General Motors, 136 So. at 622. This requirement has withstood the test of time and remains the law today. See Atl. Coast Line R. Co. v. Price, 46 So.2d 481, 483 (Fla.1950); Dep't of Transp. v. Stewart, 844 So.2d 773, 774 (Fla. 4th DCA 2003); Moorman v. Am. Safety Equip., 594 So.2d 795, 799 (Fla. 4th DCA 1992).
On the other hand, objections to the inadequacy or excessiveness of a verdict can be raised in motions for new trial without the need for an objection prior to the jury's discharge. See Radiant Oil Co. v. Herring, 146 Fla. 154, 200 So. 376 (1941).
It has been held that under the old common law rule, a motion for new trial for inadequacy of damages should not be granted but the general rule now seems *277 to be that a verdict for grossly inadequate damages stands on the same ground as a verdict for excessive or extravagant damages and that a new trial may as readily be granted in one case as the other.
Id. at 377-78.
In recent years, the line of demarcation between inconsistent and excessive or inadequate verdicts has been blurred. Scott v. Sims, 874 So.2d 21 (Fla. 1st DCA 2004) (acknowledging confusion in the case law concerning verdicts that are both inconsistent and inadequate). This is especially true in the area of no fault litigation and with the advent of special interrogatory verdict forms. Massey v. Netschke, 504 So.2d 1376, 1377 (Fla. 4th DCA 1987) (finding that the "[defendants have confused an inconsistent verdict with an inadequate verdict"). What might appear as an inconsistent verdict may actually be an excessive or inadequate verdict. The confusion has in part occurred because these arguments are often combined or intertwined, thereby obfuscating the line between the two. We use our judicial pen to draw a clearer line for preservation purposes.[1]
In doing so, we acknowledge language in Stewart, which might suggest that an excessive or inadequate verdict argument cannot be made if an objection is not lodged prior to discharge of the jury. 844 So.2d at 774-75. However, in Stewart, the appellant argued the verdict was both inconsistent and excessive. Id. at 774. We stated:
This court has consistently held that a party's failure to object or otherwise inform the court of an inconsistent verdict before the jury is dismissed waives the inconsistency in the verdict as a point on appeal. It follows that a party may not circumvent these cases by later arguing the verdict is inadequate or contrary to the manifest weight of the evidence.
Id. (internal citations omitted). To the extent Stewart suggests these arguments can never be separately made, we clarify that an inconsistent verdict is an argument that can be made separately from an argument of excessiveness of inadequacy. See Delva v. Value Rent-A-Car, 693 So.2d 574, 576-77 (Fla. 3d DCA 1997).
Consistent with common law and its evolution throughout Florida case law, a jury verdict which is truly inconsistent[2] requires an objection prior to the discharge of the jury. "[E]rrors of form or consistency must be raised on the spot. ..." Moorman, 594 So.2d at 799. Also, consistent with common law and its evolution, a jury verdict that is either inadequate or excessive, but not inconsistent, may be raised in a motion for new trial without the necessity of an objection prior to the discharge of the jury. Ludwig v. Ladner, 637 So.2d 308 (Fla. 2d DCA 1994); see also Cowen v. Thornton, 621 So.2d 684, *278 688 (Fla. 2d DCA 1993) (Altenbernd, J., specially concurring).
Here, the insurer consistently argued the verdict was excessive without mentioning the word "inconsistent." When the trial court gave defense counsel the opportunity to raise the issue of an inconsistent verdict, counsel responded there was an irregularity "[f]rom an evidentiary standpoint" but that "that argument is for another day." By raising the excessiveness issue in the motions for new trial and remittitur, defense counsel preserved the issue for consideration. See Radiant Oil, 200 So. at 377-78. The trial court erred in refusing to consider the issue based upon a lack of preservation. In fact, plaintiff's counsel reassured defense counsel and the court that "[n]either party is waiving their right on other issues." The trial court agreed, stating it is "[u]nderstood" and there is "[n]o question." We turn now to the merits of the excessiveness issue.
A trial "court should not order a new trial unless it believes that the amount awarded is so great `as to indicate that the jury must have found it while under the influence of passion, prejudice or gross mistake.'" State Farm Mut. Auto. Ins. Co. v. Rindner, 996 So.2d 932, 934-35 (Fla. 4th DCA 2008) (quoting Glabman v. De La Cruz, 954 So.2d 60, 62 (Fla. 3d DCA 2007)). "`Remittitur cannot be granted unless the amount of damages is so excessive that it shocks the judicial conscience and indicates that the jury has been influenced by passion or prejudice.'" City of Hollywood v. Hogan, 986 So.2d 634, 647 (Fla. 4th DCA 2008) (quoting Weinstein Design Group, Inc. v. Fielder, 884 So.2d 990, 1002 (Fla. 4th DCA 2004)).
Section 768.043, Florida Statutes, requires a trial court to review a jury's award of damages in personal injury actions arising out of automobile accidents:
In any action for the recovery of damages based on personal injury or wrongful death arising out of the operation of a motor vehicle, whether in tort or in contract, wherein the trier of fact determines that liability exists on the part of the defendant and a verdict is rendered which awards money damages to the plaintiff, it shall be the responsibility of the court, upon proper motion, to review the amount of such award to determine if such amount is clearly excessive or inadequate in light of the facts and circumstances which were presented to the trier of fact. If the court finds that the amount awarded is clearly excessive or inadequate, it shall order a remittitur or additur, as the case may be. If the party adversely affected by such remittitur or additur does not agree, the court shall order a new trial in the cause on the issue of damages only.
§ 768.043(1), Fla. Stat. (2008). Subsection (2) requires the trial court to consider five criteria "[i]n determining whether an award is clearly excessive ... and in determining the amount ... that such award exceeds a reasonable range of damages...." Id. These factors are:
(a) Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact.
(b) Whether it clearly appears that the trier of fact ignored the evidence in reaching the verdict or misconceived the merits of the case relating to the amounts of damages recoverable.
(c) Whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation or conjecture.
(d) Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered.

*279 (e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.
§ 768.043(2), Fla. Stat.
The defendant argues the jury's award of future medical expenses demonstrated the jury's prejudice against the defense expert, based on the improper questions concerning his out-sourcing of work and requiring examinees to disrobe. The defendant couples this argument with the economist's reliance on opinions of the plaintiff's physiatrist to justify his opinion on future medical expenses. While the physiatrist testified that the plaintiff suffered a permanent injury, the jury in fact found the opposite. This argument essentially encompasses all five factors of section 768.045(2), Florida Statutes.
After the Florida Supreme Court's pronouncement in Auto-Owners Insurance Co. v. Tompkins, 651 So.2d 89 (Fla.1995), Florida has permitted awards of future economic damages even when the jury finds no permanent injury. As the trial court recognized, while not a prerequisite, a permanent injury "is a significant factor in establishing the reasonable certainty of the future damages." Id. at 91; see also Owen, 793 So.2d at 1018.
Here, the trial court did not undertake an analysis of the five factors of section 768.045(2) because it found the verdict inconsistent and the error unpreserved.[3] Rather, the court denied both the motions for new trial and remittitur based upon a lack of preservation. Tompkins makes clear that future economic damages, including future medical expenses, can be awarded absent a finding of permanent injury. 651 So.2d at 91. However, "damages for future medical expenses" must be "reasonably certain to be incurred in the future. ..." Truelove, 954 So.2d at 1287 (quoting Loftin, 67 So.2d at 188).
Because we find the excessiveness issue preserved, we reverse and remand the case to the trial court. On remand, the trial court should focus on whether the verdict was excessive given the jury's finding of no permanent injury under the factors outlined in section 768.043(2), Florida Statutes, and whether a new trial or remittitur should be granted.
Reversed and Remanded.
HAZOURI, J., concurs.
FARMER, J., dissents with opinion.
FARMER, J., dissenting.
The majority opinion poses a false dichotomy. The choice is not between a verdict that is inconsistent and one that is excessive, each cancelling the other. We are not called here to exercise a facility in nomenclature and taxonomy. Rather, the question presented is one of composition: whether the damages fixed for future medical expenses were legally precluded because of the Jury's finding of no permanent injury.[4] It is inconsequential to preservation that the damages for future medical expenses also had the ancillary effect making total damages excessive to that *280 extent.[5] Because the legal error was apparent on the face of the final verdict, the Insurer was under an obligation to raise the issue before discharge of the Jury or suffer the loss of the issue in post trial proceedings and on appeal.
In Florida Department of Transportation v. Stewart, 844 So.2d 773 (Fla. 4th DCA 2003), where we faced the same issue presented by this case, we held:
"To preserve the issue of an inconsistent verdict, the party claiming inconsistency must raise the issue before the jury is discharged. If the trial court agrees, the trial court may reinstruct the jury and send it back for further deliberations. This procedure allows the jury an opportunity to `correct' the inconsistency. This procedure is in contrast to what is needed to challenge an inadequate verdict, which a party may raise for the first time in a post-trial motion. This court has consistently held that a party's failure to object or otherwise inform the court of an inconsistent verdict before the jury is dismissed waives the inconsistency in the verdict as a point on appeal. It follows that a party may not circumvent these cases by later arguing the verdict is inadequate or contrary to the manifest weight of the evidence. It logically follows that most inconsistent verdicts, in some respect, would be either inadequate or contrary to the manifest weight of the evidence. However, where the thrust of DOT's objection to the verdict was based on the inconsistency between an award for future economic damages and no finding of permanent injury, the DOT waived any error by not raising this issue before the jury was discharged." [e.s., c.o.]
844 So.2d at 774.[6] The final sentence in the above quotation perfectly and precisely describes the identical error in this case.
Stewart explicitly holds that for this kind of verdict the choice between inconsistency and excessiveness is false. When the excess represents an amount not authorized by the Jury's specific finding of fact (in Stewart, and here, a lack of permanent injury) the verdict is truly inconsistent  in consequence of which it contains excessive damages. To preserve the issue the party opposing such damages as are inconsistent with the factual finding is required to act before the jury is discharged. Stewart could not possibly be more definitive and conclusive on this point.
The majority's analysis seems to reflect a culture of treating this specific preservation requirement as an inconvenience freely excusable by deconstructing various aspects embraced in damages and elevating them to undeserved import. I think this is contrary to the policy on which the preservation requirement is based. We explained in Moorman v. American Safety Equipment, 594 So.2d 795 (Fla. 4th DCA 1992), that:
"there are compelling reasons not to excuse a previous failure to speak out when the original jury itself could have corrected the supposed error. They are found ... in the sanctity of a jury verdict and society's interest in avoiding repeat trials for the same dispute. Verdict inconsistencies which could have *281 been corrected while the jury was still available are simply not important enough to bypass the ordinary finality attached to their decision."
"... Appellate courts should not appear to strain to reach issues which have not been adequately preserved below. There is nothing unjust about refusing to relieve a party of its own failure to do something about an internal inconsistency in a verdict until long after the rendering jury had been discharged."
594 So.2d at 800. Progressive had a handy tool available to settle the inconsistency problem with future economic damages while the Jury was still in the courtroom. The Judge could have then properly reinstructed the Jury on the issue and required a new verdict. Instead the party claiming prejudice from the inconsistency elected to "take it up later" in spite of the rule of preservation requiring consideration then and there or lose it. There is nothing unjust about an appellate court declining to engage in linguistic metaphysics to save an unpreserved verdict inconsistency.
In sum, the problem with the future damages here is not simply an issue of either-or. It is instead a single compositional error involving an award of future damages forbidden unless the injury is permanent. Under Moorman it is improper to "use our judicial pen to draw a clearer line for preservation purposes" when a more apt clarity results by simply and correctly restating the rule itself. Stewart, 844 So.2d at 774-75; Colon, 725 So.2d at 1145. The majority's decision conflicts with our decisions in Stewart and Moorman and the Third District's in Colon.
I would affirm.
NOTES
[1] In Allstate Insurance Co. v. Manasse, 707 So.2d 1110 (Fla. 1998), the Florida Supreme Court did not reach a certified question that may have clarified this issue. The court found that a plaintiff who sustained a permanent injury and received future medical expenses, but no monetary award for future pain and suffering did not warrant a new trial. Id. at 1111-12. The second certified question asked whether the plaintiff was required to object before the discharge of the jury to raise the inadequate verdict in a motion for new trial. Having decided the case on the first issue, the court did not reach the second certified question. Id. at 1112.
[2] In criminal cases, we have made a similar distinction between a "truly" or legally interlocking inconsistent verdict and a factually inconsistent verdict. See State v. Carswell, 914 So.2d 9 (Fla. 4th DCA 2005).
[3] Interestingly, it was the trial court that determined the verdict was inconsistent, not an argument made by defense counsel.
[4] Because a transitory injury may need more time to resolve, we have held that some amount of post-trial medical expenses might be proper in spite of the absence of permanent injury. See Owen v. Morrisey, 793 So.2d 1018 (Fla. 4th DCA 2001) (unjust to prevent claimant from recovering post-trial economic damages resulting from nonpermanent injury). Here, however, the amount fixed by the Jury was undeniably based on claimant's life expectancy  as with permanent injuries  therefore facially impossible under the legal rule.
[5] In a sense damages denied by law could be thought excessive, but that is merely implicit in being precluded. Again, to ascertain the nature of the error one must probe beneath nomenclature. Hence there is no basis to discern a demarcation between inconsistency and excessiveness because the Jury's decisional error involves both. They are facets of the same stone; there is a single error in the verdict.
[6] See also C.G. Chase Constr. Co. v. Colon, 725 So.2d 1144, 1145 (Fla. 3d DCA 1998), review denied, 740 So.2d 527 (Fla. 1999) ("it logically follows that most inconsistent verdicts would, in some respect, be either inadequate or contrary to the manifest weight of the evidence").