DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RAUL SANCHEZ** and **CARMEN DE JESUS SANTANA,**
Appellants,

v.

**BILLY MARTIN,**
Appellee.

No. 4D17-1731

[June 6, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey R. Levenson, Judge; L.T. Case No. CACE14-016458 (09).

Paul L. Nettleton of Carlton Fields Jorden Burt, P.A., Miami, for appellants.

Julie H. Littky-Rubin of Clark, Fountain, La Vista, Prather, Keen & Littky-Rubin, LLP, West Palm Beach, and Jeff S. Abers of Fazio, DiSalvo & Abers, P.A., Fort Lauderdale, for appellee.

DAMOORGIAN, J.

Raul Sanchez and Carmen De Jesus Santana ("Defendants") appeal the judgment entered against them following a jury trial in Billy Martin's ("Plaintiff") automobile negligence action. Finding merit in Defendants' argument that the trial court erred in instructing the jury on aggravation of a preexisting condition, we reverse.

In 2014, a county public transit bus collided with a vehicle driven by Defendant Santana after she pulled in front of the bus. Plaintiff, who was a passenger on the bus, fell from his seat as a result of the impact. Complaining of back pain, Plaintiff was taken by ambulance to a hospital, evaluated, and discharged that same day. In the months thereafter, Plaintiff sought medical treatment for lower back pain and stiffness which he claimed was caused by the accident. Following an evaluation and a series of x-rays, which revealed a moderate amount of arthritis and some degenerative disc disease, Plaintiff was initially diagnosed with a lower back sprain and began receiving physical therapy. Plaintiff eventually

underwent an MRI which indicated that he suffered from diffuse idiopathic skeletal hyperostosis ("DISH"). The MRI also purportedly showed that Plaintiff had a three-level disc herniation in his lower back.

At trial, Plaintiff's only theory of liability was that Defendant Santana's negligence caused the accident and that the impact of the accident caused the three-level disc herniation in his lower back. Although Defendants admitted negligence, they disputed both causation and damages. Specifically, Defendants argued that the accident did not cause any of the alleged injuries and that Plaintiff's subjective complaints of pain, stiffness, and spasms were related to his various preexisting degenerative conditions.

In support of his theory, Plaintiff presented the testimony of Dr. Hinkes, the orthopedic surgeon who treated him after the accident. Dr. Hinkes testified that Plaintiff had three herniated discs in his lower back and that within a reasonable degree of medical certainty the injury was caused by the accident. In arriving at this conclusion, Dr. Hinkes relied on his records, Plaintiff's MRI, and Plaintiff's representation that he did not have back problems prior to the accident. Dr. Hinkes conceded, however, that there was no way of conclusively determining whether the herniation of those three discs occurred before, during, or after the accident by looking at the MRI alone. On cross-examination, Dr. Hinkes acknowledged that the MRI indicated Plaintiff suffered from DISH and that Plaintiff had this condition for a long time. He also acknowledged that over time, DISH can cause spasms, pain, stiffness, and various complications. Dr. Hinkes testified, however, that Plaintiff's DISH was located above the three herniated discs. Dr. Hinkes did not testify that Plaintiff's reported injuries from the accident caused an aggravation or activation of a preexisting condition.

Defendants, in turn, presented the testimony of Dr. Garcia, the orthopedic surgeon who performed Plaintiff's compulsory medical examination, and Dr. Raskin, the diagnostic radiologist who reviewed Plaintiff's MRI. Dr. Garcia opined that if Plaintiff did sustain an injury from the accident, it was a non-permanent strain/sprain to the lower back. Dr. Garcia further opined that the MRI showed no objective findings that would indicate recent trauma, but rather showed findings consistent with advanced degenerative changes stemming from Plaintiff's DISH, arthritis, and degenerative disc disease. Moreover, as to the three-level disc herniation testified to by Dr. Hinkes, Dr. Garcia explained that any such herniation was caused over the course of several years by Plaintiff's disc osteophyte complex and not by an acute traumatic event.

2

During cross-examination, Plaintiff's counsel asked Dr. Garcia whether the accident could have aggravated any of Plaintiff's preexisting conditions. Dr. Garcia responded that there was "no evidence that it aggravated the preexisting condition" and that "the indications of spasm in the neck and the lower back would be most consistent with a sprain/strain, not with an aggravation of a preexisting condition." Plaintiff's counsel thereafter generally asked whether having a preexisting condition could make a person more susceptible to injury, and Dr. Garcia responded that it could.

Dr. Raskin testified that the MRI showed no traumatic disc herniation. Rather, consistent with Dr. Garcia's assessment, Dr. Raskin opined that the MRI showed that Plaintiff had disc osteophyte complex, DISH, and bone calcifications, conditions which take years to develop and which could not have been caused by the accident. During cross-examination, Plaintiff's counsel asked Dr. Raskin whether trauma from an automobile accident could either aggravate or cause a spine problem, and Dr. Raskin responded that it could. Unlike Dr. Garcia, however, Dr. Raskin was not specifically asked whether the accident aggravated or activated any of Plaintiff's preexisting conditions.

During the charge conference, Plaintiff requested the following aggravation of preexisting condition instruction:

> If you find that [Defendant Santana] caused a bodily injury, and that the injury resulted in an aggravation of an existing disease or physical defect or activation of a latent disease or physical defect, you should attempt to decide what portion of [Plaintiff's] condition resulted from the aggravation or activation. If you can make that determination, then you should award only those damages resulting from the aggravation or activation. However, if you cannot make that determination, or if it cannot be said that the condition would . . . exist apart from the injury, then you should award damages for the entire condition suffered by [Plaintiff].

Defendants objected, arguing that the evidence and arguments presented at trial did not support the instruction and that the instruction would serve only to confuse or mislead the jury. Plaintiff countered that it was "an alternative way of looking at the evidence." The trial court gave the instruction over objection and the jury ultimately awarded Plaintiff in excess of $1.5 million for his past and future medical expenses, future lost earnings, and pain and suffering. This appeal follows.

It is well established that "[i]nstructions to the jury must be predicated upon facts in proof. Therefore, it is, of course, improper to charge on an issue where either no material evidence or no evidence at all has been submitted." *Winn-Dixie Stores, Inc. v. Nall,* 302 So. 2d 781, 781 (Fla. 3d DCA 1974); *see also Carmona v. Carrion,* 779 So. 2d 337, 339 (Fla. 2d DCA 2000) ("A trial court cannot give a particular jury instruction on an issue unless material record evidence supports that instruction.").

The Second District's holding in *Carmona* is instructive. In that case, the plaintiff sued the defendants for the injuries to her neck and back following an automobile accident. *Carmona,* 779 So. 2d at 338. At trial, it was revealed that the plaintiff suffered a work-related injury years prior and that the symptoms she complained of following the automobile accident at issue were similar to those caused by the work-related injury. *Id.* The plaintiff's expert, however, opined that the injuries for which the plaintiff sought compensation were caused by the automobile accident and were unrelated to the prior work-related injury. *Id.* The defendants' medical expert agreed that the plaintiff's "current complaints were not related to the earlier work-related injury." *Id.* Nonetheless, the plaintiff requested that the jury be instructed on aggravation of preexisting injury. *Id.* Over objection, the court gave the instruction and the jury ultimately returned a verdict in favor of the plaintiff. *Id.* at 338–39. The appellate court reversed, holding that the trial court erred in giving the instruction because the record contained no material evidence supporting such an instruction. *Id.* at 339. To the contrary, the court pointed out that "the jury heard specific, direct evidence from both [the plaintiff's] expert and the [defendants'] expert that [plaintiff's] injuries were in no way related to the prior incident." *Id.* The court also found that the error was not harmless because, after reviewing the evidence and the jury's verdict, it could not "determine whether the aggravation instruction influenced the jury in deciding the amount of damages to be awarded." *Id.*

In the present case, just as in *Carmona,* the jury heard specific, direct evidence from *both* Plaintiff and Defendants' experts that any injuries Plaintiff may have sustained from the accident did not cause an aggravation or activation of a preexisting condition. Specifically, Dr. Hinkes testified that the three-level disc herniation was caused by the accident and that the DISH Plaintiff had was located above the three herniated discs, thus implying that the injury and preexisting condition were unrelated. Dr. Garcia, in turn, testified that the disc osteophyte complex in the lower back predated the accident and that Plaintiff's subjective complaints of lower back pain and spasms were "consistent with a sprain/strain, not with an aggravation of a preexisting condition." Likewise, Dr. Raskin testified that the MRI showed no traumatic injury.

4

Simply put, the record in this case contains no material evidence supporting the aggravation instruction. In fact, Plaintiff readily admits in his brief that he "has never believed or suggested that his injuries came from an aggravation of a pre-existing condition." Nonetheless, Plaintiff maintains that by introducing evidence of his preexisting conditions, Defendants provided the material record evidence needed to support the instruction. We disagree. Defendants merely presented evidence of the preexisting conditions to rebut Plaintiff's contention that the accident caused him any permanent injury. In other words, evidence of Plaintiff's preexisting conditions was introduced to show "a continuing course of conduct over many years from which the jury could reasonably conclude that [Plaintiff's] condition immediately prior to trial was a natural result of the development of a disease which was engendered or began many years ago." *Llompart v. Lavecchia*, 374 So. 2d 77, 80 (Fla. 3d DCA 1979).

Based on our review of the record, we cannot say that there was no reasonable possibility that the erroneously given instruction did not contribute to the verdict. *See Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1265 (Fla. 2014). As causation was inextricably entwined with the nature and extent of the damages in this case, we reverse and remand for a new trial on the issue of causation and damages only. *See Owen v. Morrisey*, 793 So. 2d 1018, 1026 (Fla. 4th DCA 2001) (holding that in situations where "causation is inextricably entwined with the extent and nature of the damages," on remand "the case should be treated as one in which the trial court has directed a verdict on negligence and it remains for the jury to determine what damages, permanent or non-permanent, were caused by the negligence"); *see also Hernandez v. Gonzalez*, 124 So. 3d 988, 990 (Fla. 4th DCA 2013) (recognizing that a defendant can admit negligence while disputing causation and damages).

Defendants also argue that Plaintiff's counsel made several improper comments during closing argument. Although we need not reach the merits of this issue in light of our disposition on the instruction issue, we caution Plaintiff's counsel "to be vigilant in crafting closing arguments that fall within the confines of permissibility." *Philip Morris USA, Inc. v. Tullo*, 121 So. 3d 595, 602 (Fla. 4th DCA 2013).

*Reversed and remanded for a new trial.*

FORST and KLINGENSMITH, JJ., concur.

\*          \*          \*

5

*Not final until disposition of timely filed motion for rehearing.*